226 So.2d 552 (1969)
George L. BLADE
v.
Leo MERVIS and Celia Mervis, Individually, and Doing Business As a Co-Partnership Under the Name and Title of Southern Siding Company and Housecraft.
No. 3590.
Court of Appeal of Louisiana, Fourth Circuit.
July 31, 1969.
Rehearing Denied October 9, 1969.
*553 Meyer Sabludowsky, Harry Nowalsky and John D. Lambert, Jr., New Orleans, for plaintiff-appellant.
Loeb, Dillon & Livaudais, Marcel Livaudais, Jr., New Orleans, for defendants-appellees.
Christovich & Kearney, Lawrence J. Ernst, New Orleans, for defendant-appellee.
Before SAMUEL, REDMANN and BARNETTE, JJ.
SAMUEL, Judge.
Plaintiff instituted this suit for total and permanent disability benefits, penalties and attorney's fees under the Louisiana Workmen's Compensation Act (LSA-R.S. 23:1021 et seq.). The injuries complained of resulted from a gunshot wound. Subsequently, more than a year after the date on which the injuries were incurred, plaintiff filed a supplemental and amended petition asserting an alternative claim in tort. The defendants, Leo and Celia Mervis, individually and doing business as a co-partnership under the name of Southern Siding Company and Housecraft, filed an exception of prescription to the tort action and, in answers to both petitions, denied any liability on their part.
The exception of prescription was heard and overruled. Thereafter, following a trial on the merits, judgment was rendered in favor of the defendants and against the plaintiff, dismissing the latter's demands at his cost, on the grounds that the injuries had not arisen out of and in the course of plaintiff's employment by the defendants, thus precluding recovery under the compensation act, and that plaintiff's contributory negligence prevented a recovery in tort.
*554 Plaintiff has appealed. In this court he has abandoned the tort action and limits his demands to the compensation claims. He contends: (1) his injuries did arise out of and in the course of his employment by the defendants; and (2) defendants' refusal to pay compensation was arbitrary and capricious, thus making them liable for penalties and attorney's fees in addition to compensation benefits. Defendants contend: (1) plaintiff was an independent contractor and therefore not covered by the compensation act; and, alternatively, (2) if the act does apply, the injuries did not arise out of and in the course of plaintiff's employment.
Defendants were engaged in the business of procuring contracts calling for the application of siding to homes and selling siding and other materials used in that work. They retained salesmen on a commission basis to sell to the customers at a particular price. Upon approving a contract defendants would secure a contractor, known in the trade as a siding mechanic, to do the work and supply the necessary materials to the contractor at a fixed price per hundred square feet. The contractor was free to accept or reject a job; he set his own hours of work and time for performance; and he could accept work for any of the other siding companies in the area. Following acceptance of a job it became the contractor's responsibility to complete the same. He hired as many helpers as he considered necessary to do the work and he dealt directly with customers who requested additional work, setting his own price therefor. When the job was completed defendants paid the contractor for the same and he, in turn, paid the wages of his workmen. The amount of those wages was a matter of agreement between the contractor and his workmen.
Plaintiff was such a contractor or siding mechanic. He obtained most of his work from the defendants. The sole, inconsequential difference between his situation and what is set forth above regarding siding mechanics generally is that, at his request and solely for his bookkeeping purposes, his crews of three to five men were paid by checks issued by the defendants, given by them to plaintiff, and then given by him to the men. It is quite clear that, although he personally supervised the work and acted as foreman on each of his jobs, he also did much of the manual labor involved. He assisted in preparing the walls, loading and unloading his truck, climbing, moving scaffolding, and generally installing the siding.
Regarding the first issue, whether plaintiff was covered by the compensation act, he does appear to have been an independent contractor. But the statute was amended by Act 179 of 1948 so as to extend coverage to independent contractors who spend a substantial part of their work time in manual labor in carrying out the terms of their contracts. That provision, which now appears in LSA-R.S. 23:1021(6), reads as follows:
"`Independent Contractor' means any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or as a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished, and are expressly excluded from the provisions of this Chapter unless a substantial part of the work time of an independent contractor is spent in manual labor by him in carrying out the terms of the contract, in which case the independent contractor is expressly covered by the provisions of this Chapter." LSA-R.S. 23:1021(6) (Emphasis ours.)
Here it is clear that a substantial part of plaintiff's work time in carrying out the terms of his contract with defendants was spent in the manual labor involved in each job. Therefore, he is covered by the provisions of the compensation act. See Sam v. Deville Gin, Inc., 143 So.2d 838, and cases therein cited.
Because of the conclusion we have reached thereon, we find it necessary to consider *555 only one other issue, whether plaintiff's injuries arose out of and in the course of his employment by the defendants. As established by the record, the facts relative to that issue are as follows:
Defendants' business facilities consisted of an office, a warehouse and a small room which the siding mechanics usually utilized while waiting for jobs. During the morning of December 18, 1965 plaintiff arrived at defendants' place of business to receive payment for a job he had completed. He had no plans to work on that occasion as he was leaving the following day to spend the Christmas holidays with his family in Michigan. While waiting for his checks to be processed he became a participant in a card game, called bourre, already in progress in the mechanic's room. He received his checks no later than 1:30 p. m. and could have left at that time; but instead of leaving he returned to, and resumed his participation in, the card game. There was a considerable amount of drinking during the game; according to plaintiff's testimony he had eight or nine drinks himself. The game was still in progress at about 4:30 p. m. when plaintiff was shot by another siding mechanic following an argument over a drink. His version of the occasion is that it was the office Christmas party, but this is not borne out by the testimony of any other witness. It is quite clear that after plaintiff received his checks on or before 1:30 p. m. there was no reason, other than the card game and the drinking, for him to remain on the premises. He testified that there was no reason to remain "* * * other than I was playing bourrelearning to play bourre."
Under LSA-R.S. 23:1031, an injured employee is not entitled to receive workmen's compensation benefits unless the injury for which compensation is sought arose out of and in the course of his employment. As this court pointed out in the very recent case of Gorings v. Edwards, La.App., 222 So.2d 530, the terms "arising out of" and "in the course of" are not synonymous. The former concerns itself with an inquiry into the character or origin of the risk and the latter involves the time and place relationship between the risk and the employment.
As the requirement that, to entitle the employee to compensation, the accident must occur "in the course of" his employment simply means it must have taken place during the hours of employment and not at any other time (Kern v. Southport Mill, 174 La. 432, 141 So. 19), and as an employee may be engaged in his employer's work before or after actual working hours because the employee, while still on the premises, is entitled to a reasonable period to prepare for leaving or for other similar purposes, which period may be within the course of his employment (Carter v. Lanzetta, 249 La. 1098, 193 So. 2d 259), counsel for plaintiff argues that plaintiff was covered by the compensation act from the time he reached the defendants' premises until and including the time he sustained the injuries. We do not agree with the argument.
Malone, Louisiana Workmen's Compensation Law and Practice, Section 169, contains the following pertinent language:
"The observation has been made in previous sections that an employee is acting in the course of his employment while he is actually engaged in his employer's work even before or after working hours. Furthermore, even if he has finished the day's work and is preparing to leave, or is in the act of leaving, he is entitled to a reasonable period while still on the premises which is regarded as within the course of the employment. The working day embraces these intervals just as it includes reasonable periods for rest, relaxation or the attendance of personal needs. This applies also to periods prior to the actual beginning of work under similar circumstances.
Of course the employee may so prolong the period that he becomes a mere loiterer on the premises and is not entitled to compensation protection. No *556 fast line can be drawn in such cases, and reference must be made to the purpose that prompted him to remain and the relationship between that purpose and the conditions surrounding his work. An employee, for example, whose only available means of transportation brought him to the place of work a half hour before the commencement of his duties might be protected during this interval, while an employee who came an hour early from purely personal choice might well be excluded. Similarly, an employee who was required to walk a considerable distance home after work that exposed him to the cold would be entitled to remain on the premises for a time in order to warm himself in preparation for the return journey. It does not follow, however, that he could relax for a game of pinochle or an extended social session with his friends." Malone La.Work. Comp., § 169 (Emphasis ours.)
In the instant case we are satisfied plaintiff was not in the course of his employment at the time he sustained the injuries. As we have pointed out, his stay on the defendants' premises after he had received the checks had no connection whatsoever with his employment or the defendants' business; following receipt of the checks he remained on the premises solely and only for his own pleasure, participation in the card game and the drinking activities in connection therewith. Since he received the checks not later than 1:30 p. m. and the shooting occurred at approximately 4:30 p. m., a lapse of three hours during all of which time he was engaged in the card game, it is abundantly clear that any reasonable period involving preparation for leaving or other similar purposes had expired long before the shooting took place.
We also conclude that plaintiff's injuries did not "arise out of" his employment. There are two principal tests used in determining whether an accident arose out of the employment, the Myers and the Kern rules, which do appear to be inconsistent. The Myers rule is concerned with the character of the risk, while the Kern rule is concerned with "time, place and circumstance." This court discussed the two rules in Gorings v. Edwards, supra, 222 So.2d 533, as follows:
"There are principally two tests to determine whether an accident arose out of the employment. One rule resulted from the decision of the Supreme Court in Myers v. Louisiana Ry. & Nav. Co., 140 La. 937, 74 So. 256. The so-called `Myers rule' which is correctly set out in the syllabus is as follows:
`The test to determine whether injuries to a workman arise out of his employment is not whether the cause of the injury, that is, the agency producing it, was something peculiar to the line of employment, but whether the nature of the employment was such that the risk from which the injury resulted was greater for the workman than for a person not engaged in the employment.'
The other rule or test, the so called `Kern rule' emanates from the Supreme Court's decision in Kern v. Southport Mill, Limited, 174 La. 432, 141 So. 19. In that case the Court said:
`* * * And, when one finds himself at the scene of accident, not because he voluntarily appeared there but because the necessities of his business called him there, the injuries he may suffer by reason of such accident "arise out of" the necessity which brought him there, and hence "arise out of" his employment, if it so be that he was employed and his employment required him to be at the place of the accident at the time when the accident occurred.
`In determining, therefore, whether an accident "arose out of" the employment, it is necessary to consider only this: (1) Was the employee then engaged about his employer's business and not merely pursuing his own business or pleasure; and (2) did the necessities *557 of that employer's business reasonably require that the employee be at the place of the accident at the time the accident occurred?'"
Plaintiff's injuries did not arise out of his employment under either of the two rules. It is quite clear that, under the Myers rule, the nature of plaintiff's employment was not such that the risk from which the injuries resulted was greater for him than it was for a person not engaged in that employment; the risk of being shot in a card game while drinking and as a result of an argument certainly was not increased by his employment. It is equally clear that the test of the Kern rule is not met. At the time of the shooting plaintiff was not engaged in his employer's business, he was merely pursuing his own pleasure; and the necessities of the defendants' business did not require that he be on the premises when the shooting occurred.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.