WILLIAMS, Judge.
This appeal arises from a judgment in favor of defendant, Winn. Dixie of Louisiana, Inc., and against plaintiffs, Joseph Marino, individually and on behalf of his minor son, Domenick J. Marino, denying recovery for the personal injuries suffered by Domenick J. Marino.
Plaintiffs petitioned for Workers’ Compensation benefits and damages for personal injury and negligence arising out of an accident that injured Domenick J. Marino while he was engaged in “horseplay” with his fellow employees after work.
The trial court held that Domenick was not entitled to Workers’ Compensation as the injury was not work-related. From this judgment, plaintiff devolutively appealed. We affirm.
Domenick was employed by defendant as a part-time cashier. He and his co-workers were also required to sweep and mop the entire store as well as to clean up in the parking area in front of the store by removing any trash and cleaning up any grease spots that may have been left by customers’ cars.
On the day in question, Domenick and several co-workers had finished cleaning up and clocked out at approximately 10:47 P.M. They then walked out the front door and into the parking lot proceeding to the far side next to the street where several of their cars were parked. Domenick and his co-workers remained out in the parking lot for several minutes when, in a joking manner, Domenick attempted to execute a “karate high kick”. This is a kick, as we understood the testimony, where the aggressor leaps up with both feet, aiming at approximately head level, to strike his target. When Domenick tried to perform this kick, both feet left the ground, and as he landed, his legs gave out from underneath him, and he fell to the ground.
The assistant store manager on duty that night remained behind, to lock up, after Domenick and the other employees had left. He saw the entire incident from a window in the store. At trial, he testified that it was 15 or 20 minutes after the employees had clocked out that he noticed Domenick fall on the far side of the parking lot, approximately 50-60 feet from the front door of the store. He noticed that while the employees were in the parking lot they were “horsing around with karate-type stuff”. After the incident, the assistant manager went out and inspected the area where Domenick fell. He saw no trash or *1077 debris in the area in which Domenick fell, since the parking lot was cleaned up every day.
Ordinarily Domenick walked home from work, a short three or four blocks, in a direction opposite to where he was injured. Had Domenick gone directly home, at the time he clocked out from work, he would have made a right-angle turn from the front door of the store walking to a side street at the edge of the shopping center where defendant’s store was located. In this case, his injury prevented him from walking and the assistant store manager called his father to come pick him up and take him home.
Domenick had injured his left knee and was admitted into the hospital approximately two days later where surgery was performed. He remained in the hospital for eight days. The prognosis, after surgery, was that he had severely injured his knee as a result of the “high kick” and fall to the pavement. Medical testimony in the record indicates that Domenick has suffered, and will continue to suffer, approximately a 30% disability in his left knee as a result of this injury.
On appeal, plaintiff contends that the trial court erred in its decision on several key issues in the case: (1) failing to apply the proper law involving “horseplay” at work; (2) failing to apply the law applicable to accidents occurring on the premises immediately after work; (3) failure to find that Domenick’s injury occurred during the course and scope of his employment; (4) failure to liberally construe the Workers’ Compensation statute; and (5) failing to find that Domenick should have been found entitled to compensation benefits under the odd-lot doctrine.
“HORSEPLAY”
In general, “horseplay” occurring on the job and/or while engaged on the employer’s premises has generally been held to be compensable when the “horseplay” occurs during the course and scope of employment. That which is considered within the “course and scope of employment” is the critical issue. It has been defined as:
... an employee is acting in the course of his employment while he is actually engaged in his employer’s work even before or after working hours.
Favre v. Werk Press Cloth. Mfg. Co., 152 So. 694 (La.App.Orl.Cir.1934); Smith v. Walker, 35 So.2d 766 (La.App. 2d Cir.1948); Malone and Johnson, Worker’s Compensation Treatise, Section 167, at 337.
Generally “horseplay” is covered under the Workers’ Compensation statutes of this state. Most courts have recognized that practical joking and rough play are to be expected, particularly where employees are expected to work side by side. Schexneider v. General American Tank Co., 5 La.App. 84 (Orleans Cir.1926). This observation affords some basis to conclude that the risk of “horseplay” is one that may arise out of employment. However, there are two requirements that must be met before an accident occurring as a result of “horseplay” becomes compensable. The first is that the accident must result from “horseplay” arising out of the employment, and secondly the accident must occur during the course of employment. Malone and Johnson, Worker’s Compensation Treatise, Section 197, at 409. Where the employees have withdrawn from their employment for their own pleasure, the employee may be regarded as suffering injury outside the course of employment and recovery may be denied for that reason. Id.
Plaintiff urges that Domenick’s injury occurred during the course and scope of his employment and therefore arose out of his employment. We do not find this argument to be persuasive. The cases cited by plaintiff all deal with some degree of “horseplay” involving the injured party in each case.[1] Each of these cases holding *1078 that “horseplay” was a compensable risk contemplated under the Workers’ Compensation statutes can be factually distinguished from the case at bar. In Schex-neider, Brown, Singleton, Blackway and Bennett, the employees were still on the clock and engaged in the course of their employment. Additionally, the incident of “horseplay” arose out of their employment situation. Only in Favre, supra, does the factual situation remotely appear similar to the case at bar. There the plaintiff had returned from washing-up after completing his work for the day in a textile mill, and was cleaning his machine, when another employee threw a fruit seed into his face blinding him. While the court there granted recovery based upon the theory that “horseplay” was an expectable incident of work, we note the distinction that at the time of the injury, the plaintiff in Favre, was engaged in an activity which was un-disputably within the course of his employment and that his injury did in fact arise from his employment. In the Favre opinion, the court,' however, did not indicate whether the employees had already clocked out from their day’s work or were engaged in clean-up activities before they clocked out. In the instant case, Domenick and his co-workers had finished cleaning up their work area, both inside and outside the store, they had also clocked out, and the assistant manager in charge that night had dismissed them for the day. Then while hanging around the parking lot next to some of the other employee’s cars, Domenick attempted his kick and fell to the ground as he landed. We find no amount of liberal construction will allow us to conclude that Domenick was engaged in the course and scope of his employment at the time of his injury, or that it even remotely arose from his employment.
It is clear that injuries suffered by an employee merely occurring at the place of work, but not arising out of the employment situation do not qualify as compensa-ble accidents. Peterson v. Williams, 175 So.2d 364 (La.App. 2d Cir.1965).
ACCIDENTS OCCURRING ON PREMISES
The general rule for accidents occurring on the premises immediately after work, if the employee is in the course of his employment while on the employer’s premises, even before or after hours, is as follows:
[an employee] even if he has finished the day’s work and is preparing to leave, or in the act of leaving, he is entitled to a reasonable period, while still on the premises, which is regarded as within the course of employment.
Bates v. Gulf States Utility Company, 249 La. 1087, 193 So.2d 255 (La.1967); Malone and Johnson, Workers’ Compensation Treatise, supra, Section 167, at 337. In Bates, the employee was injured while fixing a flat tire on his car parked in the employer’s parking lot at his employer’s garage adjacent to the parking lot. The plaintiff in Bates was engaged in conduct which would have permitted him to leave the premises. The Supreme Court granted a recovery. We note three significant factual distinctions from Bates, supra. First, from the record we have learned that the lease of the premises entered into by defendant with its lessor and owner of the property provided that no tenant shall have exclusive control or right to any specific area of the parking lot. The shopping center parking lot was a common area. This notwithstanding, and giving plaintiff the benefit of the doubt that Domenick may still have been on the constructive premises of his employer, it does not change our view of the overall circumstances of the case. Domenick was no longer on duty, nor was he engaged in a work-related activity. We do not find the question of whether Domenick was on his employer’s premises relevant to our determination of this appeal.
*1079 Second, from all the testimony presented, Domenick was not preparing to leave work, nor was he in the act of leaving at the time of his injury. We conclude that Domenick was not injured on the premises while engaged in the course of his employment. This Court has previously denied compensation where the employee has so prolonged the after-work period that he becomes a mere loiterer. The causes which require the employee to remain and their relationship to his work must be examined. Blade v. Mervis, 226 So.2d 552 (La.App. 4th Cir. 1969), cert. den., 254 La. 1100, 229 So.2d 113 (La.1969); Peterson v. Williams, supra. Third, Domenick’s own testimony as to the cause of his fall and ensuing injuries was that “he just didn’t land right”. (Tr. p. 42). At the time of his injury, Domenick was not engaged in any activity which was in furtherance of his employer’s purpose, i.e. he was not sweeping the parking lot, returning shopping carts to the store or ch'arged with any other responsibility at the time of his injury. He was merely standing around, 50-60 feet from the front of the store, joking with his friends and co-workers when he fell. ■ Additionally, Domenick was not engaged in activities in furtherance of making his way home for the evening. In fact, the testimony in the record indicates that, after work hours, he had progressed in an direction opposite than that which he would have normally taken to walk home. These factual distinctions lead us to conclude that Domenick was no longer engaged in the course of his employment because, in this case, we find that a sufficient amount of time had elapsed from his last contact with his employment to place him outside his employment.
Generally, an accident occurring while an employee is going to or returning from work is outside the course of his employment. Castille v. Sibille, 342 So.2d 279 (La.App. 3d Cir.1977); Walden v. Collins, 262 So.2d 848 (La.App. 2d Cir.1972); Lacoste v. Stewart Machine Works, Inc., 247 So.2d 262 (La.App. 1st Cir.1971); Guidry v. DeFelice Marine Contractors, Inc., 200 So.2d 329 (La.App. 4th Cir.1967), cert. den., 251 La. 33, 202 So.2d 652 (La.1967). Also, an employee proceeding to or from work on foot, is outside the course of his employment until he reaches or after he leaves the employer’s premises. Thomas v. Shippers Compress and Warehouse Company, Inc., 158 So. 859 (La.App.Orl.Cir.1935). See also Malone and Johnson, Workers’ Compensation Treatise, Section 168, n. 63, at 346. Regardless of whether Domenick may have been on the premises of his employer we can only conclude that he was outside the course and scope of his employment at the time of his injury.
There was no evidence presented at trial to support the theory that Domenick was involved in any work-related activity so as to be construed as within the course and scope of his employment at the time of his injury. Although he had just clocked out, Domenick was merely standing around talking with his co-worker-friends, and was not injured while he was performing any work-related duty, nor was he in the process of leaving the premises to return to his home. We find that Domenick was beyond the course and scope of his employment and further, he had crossed the line from a work-related activity to one of personal recreation after work and no longer could be considered as being within the course and scope of his employment. For these reasons, we also reject plaintiff’s arguments that the trial court failed to liberally construe the Workers’ Compensation Statute and that Domenick was entitled to benefits under the odd-lot doctrine.
For the reasons cited above, we affirm the trial court’s judgment in favor of defendant, Winn Dixie of Louisiana, Inc.
AFFIRMED.

. Schexneider, supra; Brown v. Vacuum Oil Company, 171 La. 707, 132 So. 117 (La.1930); Favre v. Werk Press Cloth Manufacturing Co., 152 So. 694 (La.App.Orl.Cir.1934); Singleton v. Younger Brothers, Inc., 247 So.2d 273, 274 (La.App. 4th Cir. 1971); cert. den. 259 La. 59, 249 So.2d 202; Blackway v. Lefebure Corp., 393 So.2d 928 (La.App. 4th Cir. 1981); cert. den. *1078 399 So.2d 610 (La.1981); Bennett v. Industrial Welding and Fabricating, 411 So.2d 574 (La. App. 1st Cir.1982).